## SUPREME COURT.

JEREMIAH MILBANK and others agt. JONATHAN CRANE and others.

Upon the death of a sole or surviving *trustee* of an express trust, the *trust vests in the supreme court ;* and it is the duty of the court to *appoint another person as trustee* to complete its execution.

The proper mode of *appointment* of the new trustee, it being necessarily summary and not by formal bill, is by *application by petition* under the statute.

The *quasi* jurisdiction *in rem,* a power over the trust which the court has, is not acquired by the service of process upon the *cestui que trust* or other person interested in the trust fund or its preservation; and although it is undoubtedly proper and usual in most cases to call those more immediately interested before the court, that they may be heard in the appointment of a new trustee, yet it is in the *discretion* of the court, and relates to the orderly and methodical progress of the petition or other proceeding.

The notice or summons is not in the nature of process to bring the party into court and give jurisdiction of the person; consequently, the appointment of the new trustee is *valid,* even if it should be thought to be *irregular,* or even imprudent and indiscreet, to make it without formal notice to and summons of those interested.

So, too, the *fitness* of the persons named as trustees is a question for the tribunal charged with the appointment, and, so far as the selection rests in the discretion of the court, the exercise of that discretion *cannot be reviewed.*

There is no absolute prohibition of the appointment of a *feme covert* as trustee. She is not disqualified; and when she is interested, and her husband, who is disinterested, is united with her, it may be a very fit appointment to make. That question is also one for the discretion of the court.

Where a devise or bequest in a will embraces a fluctuating class of persons, who, by the rules of construction, are to be ascertained at some future period, the *decease* of any of such persons before the time fixed will occasion *no loss or variations in the disposition.*

*New York Special Term, April,* 1863.

BILL filed asking for the removal of the defendants, Mr. and Mrs. Crane, and the appointment of some other trustee in their stead, &c.

PIERREPONT, STANLEY & LANGDELL, *for plaintiffs.*

PLATT, GERARD & BUCKLEY, and JAMES W. GERARD, *for defendants.*

ALLEN, Justice.  Upon the death of the trustee the trusts created by the will of Nathaniel W. Sanford de-

volved upon this court as the successor in jurisdiction to the court of chancery. The Revised Statutes abrogated the common law rule, and enacted that upon the death of the surviving trustee of an express trust the trust should not descend to his heirs or pass to his personal representatives, but should vest in the court of chancery (since transferred to this court) with all the powers and duties of the original trustee, and should be executed by some person appointed for that purpose, under the direction of the court. (1 *R. S.*, 730, § 68 ; 3 *R. S.*, *5th ed.*, 22, § 87 ; *Willard's Eq. Jur.*, 419.) By the death of the testamentary trustee, Horace Holden, the court acquired jurisdiction of the trust, and was charged with the duty of its execution; and upon the death of Francis P. Sanford, who had been appointed to execute the trust under the direction of the court, it again devolved upon the court, and it became a statutory duty to appoint another person to complete its execution.

The proceedings for the appointment of a new trustee and the execution of the trust were necessarily summary, and not by formal bill. An action, with all its delays and expense, would have been out of place. The duty to appoint a trustee was imperative, and the court had simply the exercise of a discretion in the selection of a suitable person, and the taking the requisite security. The court, by the death of a sole trustee, became trustee, and the person appointed was its agent to carry out the trust under its direction. It may well be that, but for the statute authorizing a summary application by petition, the orderly way for the removal or change of a trustee would be by bill ; but not so when there is no trustee, but one is to be appointed by the court to fill the vacancy. The proceeding by petition was regular, and in the usual course. (*Hawley* agt. *Ross*, 7 *Paige*, 103.) In the *People* agt. *Norton*, (5 *Seld.*, 176,) it is said by the court that the court of chancery had the power upon petition, by reason of its general

Milbank agt. Crane.

jurisdiction of all cases of trust and independent of any statute, to displace a trustee and appoint another in its stead. *In the matter of Van Wyck*, (1 *Barb. C. R.*, 568,) the chancellor expressed the opinion that, aside from the statute conferring the power, the court could not, upon petition, accept the resignation of a trustee and appoint another ; but the point is not very material, as the statute has covered this defect in the jurisdiction, and it is high evidence that no such express grant of power to proceed summarily was wanting when the surviving trustee had died, that it was not conferred, although the case was provided for in the same connection with the removal and resignation of a trustee. The demand for summary process was at least equally urgent in the case of a vacant trust as in the other cases.

There can be no question of jurisdiction, and it is a *quasi* jurisdiction *in rem*, a power over the trust, and is not acquired by the service of process upon the *cestuis que trust* or other person interested in the trust fund or its preservation. It is undoubtedly proper and usual in most cases to call those more immediately interested before the court, that they may be heard in the appointment of a new trustee. But this is in the discretion of the court, and relates to the orderly and methodical progress of the petition or other proceeding. The notice or summons is not in the nature of a process to bring the party into court and give jurisdiction of the person. This being so, the appointment of the new trustee is valid, even if it should be thought to be irregular, or even imprudent and indiscreet, to make the appointment without formal notice to and summons of those interested. A departure from the usual practice of the court does not render the act void. It may be irregular or erroneous, and upon a direct proceeding may be set aside or reversed, but its validity cannot be questioned in a collateral action. (*Per* RUGGLES, J., *People agt. Norton, supra.*) So, too, the fitness of the persons

named was a question for the tribunal charged with the
appointment, and so far as the selection rested in the dis-
cretion of the court, the exercise of that discretion cannot
be reviewed. A different question would arise upon an
application to remove for cause. But so long as there is
no legal disqualification and no absolute unfitness, the
appointment cannot be impeached for the reason that it
may not be considered the best that could have been made,
or the most discreet.

There is no absolute prohibition of the appointment of a
*feme covert* as trustee. She is not disqualified; and when
she is interested, and her husband, who is disinterested, is
united with her, it may be a very fit appointment to make.
That question was presented to and passed upon by the
court making the appointment. A *feme covert* may be a
trustee; and the reasons which are urged against her are,
her own interest or that of her husband, or both, and in
some cases the difficulties of her executing conveyances
without her husband. (*Lake* agt. *DeLambert*, 4 *Vesey*, 595;
*Compton* agt. *Collinson*, 2 *B. C. C.*, 387; *Lewin on Trusts*, 34
*and seq.*) These difficulties are obviated by uniting her
husband with her. Neither are *cestuis que trust* incapaci-
tated from being trustees, as the court will, under special
circumstances, appoint them. The question is only one of
relative fitness. (*Lewin on Trusts*, 579, *citing ex parte Chil-
ton*, 17 *Jur.*, 988.) It must be presumed that the special
circumstances were shown to the court in this case; but
whether they were or not is immaterial. If the court
could, in any case, appoint a *cestui que trust* as trustee,
the appointment, when made, is valid. But in this case,
Mr. Crane, a disinterested person, is made a co-trustee,
although the relationship between him and a principal
*cestui que trust* would probably affect his qualifications, if
his wife as *cestui que trust* were absolutely disqualified.
The appointment appears to me to have been very suitable
and proper under the circumstances, and no cause has been

shown for making a change. It follows that the relief asked in the removal of Mr. and Mrs. Crane, and the appointment of some other trustee in their stead, cannot be granted, and the defendants, Crane and wife, as trustees, are entitled to a decree for the payment and delivery of the trust funds to them. As the representatives of the deceased trustee, the plaintiffs took no title to the trust estate, and in no capacity have they any right to its custody or control.

It is claimed, however, that the trust has ceased as to one-third of the estate, and that the title of the trustee has also ceased. (1 *R. S.*, 730, § 47, *or* 3 *R. S.*, *5th ed.*, 22, § 86.) This is undoubtedly true. The trust in the one-third set apart for the use of the widow of the testator, Hannah Sanford, ceased upon her death, July 24, 1862, and at her death the absolute right to that portion of the fund vested in the donees, to whom it was given by the will. The plaintiffs claim that to one-half of this one-third they are entitled by the will of Francis P. Sanford, the gift in remainder under the will of Nathaniel W. Sanford not taking effect by reason of the death of Francis P. before the termination of the life estate; and upon this claim they rest in part their right to reclaim the trust fund, or, at least, their right to an accounting and the setting apart to the use of the representatives of Francis P. of a part of the trust fund. This depends upon the fair construction of the will. It is apparent from the face of the will that in respect to this portion of his estate, Nathaniel W. Sanford did not intend to die intestate, and that he designed that after the death of his widow it should go to his children, and the children of such of his children as should have in the meantime died. It is equally apparent from the tenor of the will that the persons who were to take under this clause of the will were to be ascertained at the time of the death of the widow, and that only those who were then living and answered the description of the will could take under it. The be-

quest is to the children of the testator living at the decease of the widow, and the surviving children of such of them as might then be dead. Upon this phraseology no question can be made as to the class of persons who take.

Francis P. Sanford died before the termination of the life estate, and took no interest under this clause of the will. He left no children him surviving, and therefore no one took under him by representation. The only other child of the testator was Mrs. Crane, and she survives and is entitled to the whole of this third of the estate, unless for some reason the entire provision fails and the testator's intent is defeated. It is urged that this is so upon the peculiar terms of the clause. It directs the fund to be divided among the children of the testator then living, and the children of such as should have died, in equal proportions ; and stress is laid upon the division, as if that were the principal thing to be accomplished, and *that* failing for want of more than one person entitled, the gift must fail as incidental to the contemplated division. But the just rule is to regard the transmission of the property to the lineal descendants of the testator, living at the time indicated, as the thing to be accomplished, and the division as only an incident, and necessary in certain contingencies to carry into effect this intent, and then the bequest stands, and a division is only made in case it becomes necessary. Had other children been born to the testator after the making of the will, or children been born to his son Francis P. before the death of the widow, the division might have been necessary, and hence the provision was proper. The direction for a division only declares and determines the part or share which each shall take, and the effect is the same as if the gift had been to children then living and children of deceased children, fixing in any other way the share which each child or class should take, and whether *per capita* or *per stirpes*. So long as there is any object *in esse* capable of taking at the time limited for the vesting of

the estate, the gift cannot fail. The testator's intention in favor of his children and grandchildren ought not to be frustrated by a too literal adherence to the letter of the will. (*See Buffon* agt. *Bradford*, 2 *Atk.*, 220 ; *Parkinson* agt. *Burdoin*, 1 *Summ.*, 366 ; *Ware* agt. *Rowland*, 2 *Phillips*, 635.)

Where a devise or bequest embraces a fluctuating class of persons, who, by the rules of construction, are to be ascertained at some future period, the decease of any of such persons before the time fixed will occasion no loss or variations in the disposition. Thus, if property be given simply to the children or to the brothers or sisters of A., equally to be divided between them, the entire subject of the gift will be vested in any one answering the description, without regard to previous deaths. (2 *Jarman on Wills*, 295 ; *Doe* agt. *Sheffield*, 13 *East.*, 526 ; *Jackson* agt. *Staats*, 11 *J. R.*, 337 ; *Ware* agt. *Rowland*, 2 *Phillips*, 635.) I am of the opinion that Mrs. Crane, as the surviving child of the testator, and the only person living at the death of the widow, answering the description in the will, took this part of the estate absolutely.

As to the third devise in trust for the life of Francis P., (and his widow in case of her surviving him upon his death without children,) as the trust continues in respect to it, and the parties that may be entitled at the death or marriage of the widow of Francis P., at which time the objects of the testator's bounty are to be ascertained, may not be the same that are in existence, and would be entitled now so that a decree now made would not necessarily be final or obligatory upon the parties in interest, I deem it best not to pass upon it. This clause of the will is materially different in its terms from that before considered. The testator had limited this portion of his estate for two lives, in being, and to avoid the risk of coming in contact with the law against perpetuities, thought best not to attempt a further specific disposition of it, but on the falling in of the second life, directed it to go to his right heirs and

next of kin. There is· nothing to show that those answering that description at the time of the vesting of the estate in possession were intended, and it would seem that in the absence of such intent expressed in some way, the law declares those who were his heirs and next of kin at the time of his death, to be the persons intended. Such is the rule declared in *Holloway* agt. *Holloway*, (5 *Vesey*, 399,) and followed in succeeding cases so far as the cases have come under my observation. (*Ware* agt. *Rowland, supra ; Abbott* agt. *Bradstreet*, 3 *Allen*, 587 ; *Doe* agt. *Provoost*, 4 *J. R.*, 61.) I think it will be found that when the rule has been apparently departed from, the cases are distinguishable either by some peculiar expression in the will or some extrinsic circumstance from which a different intent has been deduced. But for the reasons before suggested, this question is left undecided until by the determination of the trust it shall become material, and the parties then claiming to be entitled shall be known and can be heard.

The plaintiffs filed the bill without cause and withheld the trust property without right, and should pay the costs of the litigation. They must also pay and deliver over to the trustees all the trust fund and property, and, in case of disagreement, it must be referred to a suitable person under whose direction the transfer must be made and by whom the accounts of the parties must be adjusted.