[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 44 
The judge erred in ordering a dismissal of the complaint against the bank. Such an order could not be properly made upon the trial of issues settled in an equity action before a jury. Upon that trial, a verdict upon all the issues as to all the parties should have been rendered, and the cause afterward heard by the court upon the verdict and other competent evidence produced by the parties, and the judgment should then be given by the court. (Birdsall v. Patterson, Com. of App.,51 N.Y., 43.) But a reversal of the judgment in favor of the bank upon this ground merely, will leave the real and only question litigated between the plaintiff and the bank undisposed of. This should be avoided, if it is presented by the case in a manner enabling the court to determine it. That question is, whether the bank, having in good faith taken a transfer of the certificate from Miller *Page 45 
as security for his note, given to it at the time for money then loaned by the bank to him, acquired a title to the certificate, valid as against the plaintiff, as security for the money so loaned. It is clear that it acquired nothing more, as against the plaintiff or Miller. Upon repayment of the money loaned, and interest, the bank would be bound to retransfer the certificate to the party entitled, which the judgment given in the action between the plaintiff and Miller shows to be the plaintiff. The bank cannot make title to the certificate upon the ground that Miller had authority from the plaintiff to sell it, as his agent in New York, for the reason that the case shows that, unless he effected a sale there within three weeks from the time he received the certificate from the plaintiff, he was to return the same to him, and receive back from him the notes and his check given by him to the plaintiff therefor, and that the bank did not obtain the certificate from Miller until after the expiration of the three weeks. Had the plaintiff authorized Miller to sell the check, as his agent, this would not confer authority to pledge it as security for a loan of money from the bank. Besides, the case fails to show that Miller was to sell the certificate, as agent for the plaintiff, but it does show that he purchased the same from him, giving notes and his check therefor, coupled with an agreement that, if he failed to get it cashed in New York in three weeks, he should return it to the plaintiff, and receive back the notes and check. This did not constitute Miller the agent of the plaintiff. If he got the certificate cashed, it was for himself, and the money received therefor would have been his, and not that of the plaintiff. The case further shows that the plaintiff executed an absolute transfer of the certificate written thereon to Miller, and delivered the same to him. It further shows that Miller, in making the purchase, practiced such a fraud upon the plaintiff as would authorize him to rescind the contract, as to him, and that he did, upon the discovery of such fraud, elect to rescind the same. The question is thus presented whether a bona fide purchaser of a chose in action, not negotiable, from one to *Page 46 
whom the owner has transferred the apparent absolute ownership, upon the faith of such ownership obtains a valid title as against such owner, although his vendor had not such title. The counsel for the plaintiff insists that this precise question was decided against the title acquired by such purchaser, by this court, inBush v. Lathrop (22 N.Y., 535), where it was held that equities existing between the assignor and assignee of a chose in action, not negotiable, attend the title transferred to a subsequent assignee for value, without notice, — that the latter takes the exact position of his vendor. The counsel for the bank, to sustain its title, cites McNiel v. The Tenth National Bank
(46 N.Y., 325). In this it was held that, where the owner of corporate stocks conferred upon another an apparent title to or power of disposition over it, he is estopped from asserting his title as against an innocent third party who has acquired title in good faith from such apparent owner. It is obvious that both these cases cannot be upheld, unless there shall be found to be a distinction between the acquisition of title to stocks in a corporation and choses in action not negotiable. The CommercialBank of Buffalo v. Kortwright (22 Wend., 348) involved the same question as the latter, which was decided the same way by the Court for the Correction Errors. Further discussion of the principle upon which the decisions in these cases were based, or citation of the authorities sustaining it, is unnecessary. That work has been well done by the able judges who delivered the opinions therein. The counsel for the plaintiff concedes that the rule is the same in regard to goods and chattels. A citation of the numerous authorities sustaining this position is, therefore, unnecessary. Yet it is beyond question that the general rule is that a purchaser of corporate shares, or of goods and chattels acquires only such title as the vendor had thereto. Ballard v.Burgett (40 N.Y., 314) was decided upon this ground. One reason why an owner of corporate shares or of goods and chattels, who has conferred upon another the apparent ownership, without transferring to him a valid title, was held precluded from asserting *Page 47 
his title, against a bona fide purchaser from such apparent owner, is that such purchase was made upon the faith of the title which he had apparently given, and that it would be contrary to justice and good conscience to permit him to assert his real title against an innocent purchaser from one clothed by him with all the indicia of ownership and power of disposition. Another reason was, that were the rule otherwise, it would afford opportunities for the perpetration of frauds upon the purchasers from such apparent owners. Where one, known to be the owner of shares or chattels, delivers to another the scrip or possession of the chattels, together with an absolute written transfer of all his title thereto, he thereby enables him to hold himself out as owner, and, as such, obtain credit upon and make sales of the property; and if, after he had so done, the owner was permitted to come in and assert his title against those dealing upon the faith of these appearances, the dishonest might combine and practice the grossest frauds. Another reason is that it presents a proper case for the application of the legal maxim that, where one of two innocent parties must sustain a loss from the fraud of a third, such loss shall fall upon the one, if either, whose act has enabled such fraud to be committed. All these reasons, it is obvious, apply with all their force to choses in action. Why should the owner of a horse or of bank shares, who has given to another an absolute written transfer of all his right thereto for some purpose other than that of passing the title, be precluded, as against a bona fide purchaser from such person, from asserting his title, while, under the same state of facts, he may reclaim from such purchaser a bond and mortgage or a certificate of indebtedness like the one in question? As to the former he is estopped, while as to the latter the same state of facts, it is insisted, will work no such result. The counsel for the plaintiff insists that such distinction should be made, for the reason that the purchaser of corporate shares and chattels from the apparent owner obtains a legal title which is valid and may be asserted in a court of law, while the assignee of a chose in action, not negotiable at common law, obtained an equitable *Page 48 
title only; and that the equity of the former owner, being prior in time to that acquired by the purchaser, is superior thereto, the rule in equity being that, where the equities are equal, the first in time shall prevail; but upon what ground the same state of facts that will estop a party from the assertion of a legal title will not also estop him from the assertion of an equitable one the counsel fails to show, for the very good reason that no such ground exists. It is so obvious that the estoppel should, upon principle, apply to the latter equally with the former, that a distinction can only be justified upon authority.
The counsel further insists that to apply the same rule to non-negotiable choses in action will, in effect, make them negotiable. Not at all. No one pretends but that the purchaser will take the former subject to all defences, valid as to the original parties, nor that the mere possession is any more evidence of title in the possessor than is that of a horse. In both respects, the difference between these and negotiable instruments is vital and not at all affected by the application of the same rule as to chattels. In Bush v. Lathrop
(supra), the learned judge commences his examination of the authorities by citing the remark of Lord THURLOW, in Davies v.Austen (1 Vesey, 247), that "a purchaser of a chose in action must always abide by the case of the person from whom he buys." When applied to the facts of that case it was entirely correct. It was a case where the assignee of a legacy sought to enforce rights against the executor not possessed by his assignor. He then proceeds to examine the authorities pro and con., which he thought somewhat conflicting, and arrived at the conclusion that there was a decided preponderance in favor of the right of the owner to reclaim from the bona fide purchaser. Sandford v.Van Rensselaer (Hopkins R., 569; S.C. in error, 7 Cowen, 316) was much relied upon by the learned judge. That was a contest between assignees, from the same assignor, of two mortgages as to their respective priority, and had nothing to do with the point under consideration. Covell v. The *Page 49 Tradesman's Bank (1 Paige, 131), also relied on, was placed upon the ground that the plaintiff had the legal title to the sealed note in question and the power to sue upon it, and that in such a case was entitled to the money due thereon, his equity being equal to that of the other claimant. This is now changed by the Code, by which the power to sue is placed in the assignee of choses not negotiable, and therefore the reason for the judgment no longer exists. Muir v. Schenck (3 Hill, 398) was a contest between the assignees claiming from the same assignor, which was an entirely different case from the assignor who has made an absolute assignment claiming in opposition thereto from a bonafide purchaser from his assignee. The same remark is applicable to Pailon v. Martin (1 Sand. Ch., 569) and Sweet v. VanWyck (3 Barb. Ch., 647). I think the conclusion of the learned judge, that the owner can assert title to a chose in action from a bona fide purchaser from one to whom he has given the apparent ownership, is unsound in principle and not sustained by authority. No allusion whatever is made by him to the rule as to corporate shares or chattels, or to the reasons upon which it is founded; no distinction is made between this kind of property and non-negotiable choses in this respect, and I think that none is warranted by reason or well-considered authority. Bush v.Lathrop was decided by a majority of the court, three of the judges dissenting. Some of the majority may have concurred upon the ground of notice to the purchaser; but whether so or not, I think McNeil v. The Tenth National Bank (supra) identical in principle with the present, much better considered, and that its principle should control. It follows that the bank, if it made the loan in good faith to Miller, upon the credit of the certificate, acquired a title thereto valid against the plaintiff to the extent of the loan. From the papers it appears that the certificate, at the time, amounted to something more than the loan to Miller by the bank. This excess belongs to the plaintiff. Cases where Bush v. Lathrop was referred to, in the opinions delivered in this *Page 50 
court, with apparent approbation were cited by the counsel; but in none of them was the question in the present involved In that several legal propositions were stated with perfect accuracy. It was in reference to these that the case has been so referred to, without at all considering the present question. I think the recital in the assignment from Miller to the bank, that it was for value received, was not evidence in favor of the bank against the plaintiff of the payment or loan of the money to him; that the introduction of the asssignment by the plaintiff, for the purpose of showing what claim the bank made, or for any other purpose, did not make it so.
The judgment in favor of the bank must be reversed and new trial ordered, costs of the appeal to abide the final judgment for costs in the cause.
All concur, except ALLEN and FOLGER, JJ., who concur in the result, on the ground of the mistrial; but ALLEN, J., dissents from opinion, as to rights of a bona fide purchaser, and FOLGER, J., does not vote thereon.
Judgment reversed