Wright, J.
Whether or not Woods was a bona fide •holder, we will not discuss at any length. Erom the evidence, it seems he resided in Massachusetts, and had loaned the Chandlers a considerable amount of money, for which he had their chattel mortgage. They offered to transfer him the Thompson notes, if he would cancel the mortgage, which was done. The Chandlers state that Woods knew nothing of the circumstances of the fraud.
Upon the evidence, the district court found that Woods was such bona fide holder. This was a question of fact, and we must regard the finding of the court below in the nature of the verdict of a jury, uot to be set aside, unless clearly against the evidence, and Ave do not see that any ■such inconsistency exists.
In order to consider the propositions of law involved, the case may be thus stated: Thompson makes and delivers to ■Combes, as guardian, non-negotiable notes ; by fraud, misrepresentation, and without adequate consideration, the ■Chandlers obtain these notes from Combes, and transfer ■them to Woods, a bona fide purchaser, for value, without notice. The question to be decided is, can Woods hold the paper as against Combes, the original assignor. It is clear that the Chandlers could not. Having obtained the property fraudulently, and in the manner stated, if they had the notes, they could not retain them. Is Woods, assignee -of the Chandlers, in any better position? It is claimed *182 that he is not, because the assignee of a non-negotiable' chose in action, must stand in the shoes of his assignor, and be affected with all infirmities of title in him.
To sustain this proposition authorities are cited to this effect. ,
“ A purchaser of a chose in action takes it subject to all. equities.” Cockell v. Taylor, 15 Eng. L. and Eq. 101.
“ The purchasers of a chose in action can not be in a better position, than the person from whom he purchased.” Brandon v. Brandon, 39 Eng. L. and Eq. 186.
“ The assignee of a chose in action, or security of any kind, stands in exactly the same situation as the assignor,, as to the equities arising upon it. He must be taken to be cognizant of them.” Mangles v. Dixon, 18 Eng. L. and Eq. 82.
Where it is said that a purchaser takes subject to equities, the first thing to be determined, is, what equities are-spoken of? It is not meant that equities of every kind,, arising in favor of every person, are the ones to be considered.
Story says this: “ If the transfer is after the maturity of the note, the holder takes it as a dishonored note, and it is affected by all the equities between the original parties,, whether he has any notice thereof or not. But when we speak of equities between the parties, it is not to be understood, by this expression, that all sort of equities existing between the parties, from their independent transactions between them, are intended; but only such equities as attach in the particular note, and as between these-parties.” Prom. Notes, § .178.
Pomeroy on Remedies, says : “ The general doctrine is-elementary, that the purchaser of a thing in actiou, not negotiable, takes the interest pui’chased subject to all the defenses, legal and equitable, of the debtor who issued the obligation.” § 157.
In Hayward v. Stearns, 39 Cal. 58, it is held: “ The assignee of a promissory note, overdue, takes it subject to all the equities subsisting between the maker and payee,. *183 but free from ¡ill equities subsisting between the maker and any intermediate holder.” Kyle v. Thompson, 11 Ohio St. 616, recognizes the same doctrine. Woods’ ownership of these notes, therefore, can not be disputed by the general statement that he takes non-negotiable paper subject to' equities, inasmuch as that expression relates to the original parties, and refers to some equity that the maker has against the payee. No such equity is claimed to exist. Thompson, the maker of the notes, does not pretend to-impeach them, but says he is ready and willing to pay whenever it is determined who is the proper party to receive.
There being then no infirmity in the paper itself, which would render it valueless in the hands of a remote assignee, it is urged that Woods takes the same title the Chandlers did ; and, as by reason of their fraud, they could not hold it, therefore Woods can not.
It has been stated that the Chandlers sold their spectacle manufactory to Combes fraudulently, misrepresenting its value, and took these notes in payment. It seems that Combes did not discover this fraud until long after the transaction, and some eighteen months after Chandlers had sold the notes to Woods.
As a general proposition, it is true that the assignee of a chose in action can take no better title than that of his assignor. One can not sell more than he has. But this doctrine must be taken in connection with another, which is that the original owner may so act as to estop himself from asserting his rights. If one sells me a horse which he has stolen, as a general thing, I may not be able to hold it as against the true owner; but if that owner happened to be standing by at the sale, and saw me pay my money, without objection from him, he might find it difficult to reclaim his property.
The questions here proposed have been much discussed in New York, where there has been somewhat of a conflict of views, as is not unusual in that state. Bush v. Lathup, 22 N. Y. 585 ; McNeil v. Tenth Nat. Bank, 46 N. Y. 325 ; *184 Moore v. Met. Nat. Bank, 55 N. Y. 41. These cases give such an extended view of the whole subject that further investigation would be superfluous. An able discussion of these questions is also found in Pomeroy’s Legal Remedies, §§ 156 to 163, inclusive. The syllabus of the last case cited announces a proposition, which we think is applicable to the one before us.
“A bona fide purchaser for value of a non-negotiable chose in action from one upon whom the owner has, by assignment, conferred the apparent absolute ownership, when the purchase is made upon the faith of such apparent ownership, obtains a valid title as against the real owner, who is estopped from asserting a title in hostility thereto.”
The reasoning given by the court in its opinion seems to apply to the case we are considering, and we adopt it as our own.
“ One reason why an owner of corporate shares or of goods and chattels, who has conferred upon another the apparent ownership, without transferring to him a valid title, was held precluded from asserting his title against a bona fide purchaser from such apparent owner, is that such purchase was made upon the faith of the title -which he had apparently given, and that it would be contrary to justice and good conscience to permit him to assert his real title against an innocent purchaser from one clothed by him with all the indicia of ownership and power of disposition. Another reason was, that were - the rule otherwise, it would afford opportunities for the perpetration of frauds upon the purchasers from such apparent owners. When one known to be the owner of shares or chattels delivers to another the script or possession of the chattels, together with an absolute written transfer of all his title thereto, he thereby enables him to hold himself out as the owner, and, as such, obtain credit upon and make sales of the pi’operty; and if, after he has so done, the owner was permitted to come in and assert his title against those dealing upon the faith of these appearances, the dishonest might combine and practice the grossest frauds. Another *185 reason is that it presents a proper ease for the application •of the legal maxim that, where one of two innocent persons must sustain a loss from the fraud of a third, such loss must fall upon the one, if either, whose act has enabled such fraud to be committed.” (p. 46.)
Pomeroy states the doctrine thus : “ The owner of certain kinds of things in action not technically negotiable, but which, in the course of business customs, have acquired ■a semi-negotiable character as a matter of fact, may assign -or part with them for a special purpose, and at the same time may clothe the assignee or person to whom they have been delivered with such apparent indicia of title, and instruments of complete ownership over them, and power to dispose of them, as to estop himself from setting up against a second assignee to whom the securities have been transferred in good faith for value, tbo fact that the title of the first holder was not absolute and perfect.” Legal Rem. 160. Nor does the doctrine of estoppel, thus applied, have the 'effect of making non-negotiable choses negotiable as was claimed in argument of cases above cited. The purchaser, .at all times, takes the chose subject to equities or defenses, valid as between the original parties, and this distinction must be borne in mind.in reference to other equities and other defenses between other parties. The rule that the •chose is open to defenses growing out of the original trans.action, in the hands of any assignee, however remote, is not .altered by the application of the principle of estoppel as -against other defenses. Trustees of Union College v. Wheeler, 61 N. Y. 114.
It is only when the owner, by his own affirmative act, has conferred the apparent title and absolute ownership upon another, upon the faith of which the chose in action has been purchased for value, that he is precluded from asserting his real title. Davis v. Bechstein, 69 N. Y. 442. There are no equities attaching to the notes in this ease, in the proper sense of the phrase. The maker still asserts their validity and his willingness to pay them. He sets up nothing as against the payee or any one else. "When they *186 came into the hands of Combes he transferred them to Chandlers, giving them all the indicia of ownership, with full powers to sell, transfer, or do with them whatever they would. It was Combes’ intention to part with the paper; he did it voluntarily, intending that Chandlers should take full title and full ownership. After this was done, after the paper had come into the hands of Wo<5ds, Combes discovers that he was swindled in the original transaction, and now attempts to right himself, not at the expense of Chandler, the wrong-doer, but of Woods, the innocent party. There is nothing to prevent Combes from suing Chandler and making him repair the loss. This remedy and right of action is complete, and it would certainly be unseemly that Combes should have this, and also be permitted to reclaim the paper itself.
It does not seem to us other than the ordinary case of one who has been cheated in the sale of personal property.. If the consideration has failed he can recover of the wrongdoer, but not relake the property from, the one who has-innocently bought and honestly holds it.

Judgment affirmed.