ELIZABETH CLARKE, RESPONDENT, *v.* EDWARD ROBERTS, APPELLANT.

*Mortgage — to what equities existing in third persons an assignee is not subject.*

A., the owner of certain land, contracted with B. to convey it to him for $15,000 and to advance certain money to B., who was to erect buildings upon the premises. Before the buildings were finished B. agreed with the defendant in this action to finish and convey to him two of the houses, in consideration of which the defendant was to assume mortgages on the houses for $25,000, and to pay $16,000 by a conveyance to B. of lots valued at that sum.

By agreement of the parties, A. conveyed the houses directly to the defendant, who executed his bond and a mortgage thereon to an insurance company for $16,000; and a second bond and mortgage to A. for $9.000. He also executed to B. and delivered *in escrow* a deed of the $16,000 lots.

This deed was to have been held until the houses were completed, but in violation of that understanding was delivered to B. before their completion. Through the mortgages A. received $15,000, the price of the land he had contracted to sell to B., and $5,000 he had advanced. The $9,000 bond and mortgage was subsequently assigned, for value received, to the plaintiff, who brought this action to enforce the payment of the balance due on the bond, the defendant having paid the interest and $5,500 on account of principal.

The defendant alleged that B. had failed to finish the houses, in consequence of which there was a partial failure of the consideration of the bond and mortgage, and asked that the sum of $3,000, his damages arising from such failure, be offset against the amount still unpaid on the bond and mortgage.

*Held,* that while it might be conceded that A. held such $9,000 bond and mortgage to the extent of $4,000 as trustee for B., yet the instruments were silent on that subject, and the plaintiff's rights were not affected by the fact of B.'s interest therein.

That as it did not appear that the plaintiff took the bond and mortgage, with knowledge of the equities existing in favor of the defendant growing out of his contract with B., and as there was nothing in the instruments giving notice thereof, that the defendant was not entitled to offset his damages arising from B.'s breach of contract against the plaintiff's demand.

That the title of a *bona fide* purchaser for value of a non-negotiable chose in action, purchased from a person who has an apparent title thereto, cannot be contested by one who has himself conferred such apparent title on the vendor.

APPEAL by the defendant from a judgment in favor of the plaintiff, entered on the verdict of a jury. The action was brought to recover $3,500 and interest, on a certain bond executed by the defendant, and purchased in good faith and for a valuable consideration by the plaintiff, to which the mortgage mentioned in the following opinion was collateral.

*Jacob F. Miller,* for the appellant.

*James B. Bullock* and *Edward Mitchell,* for the respondent.

BRADY, J.:

It appears from the evidence in this case that David Bailie, being the owner of certain lands in the city of New York, agreed to convey them to James S. Dale for the sum of $15,000. The property extended from the First avenue, on the line of One Hundred and Twenty-third street, about one hundred and fifty feet ten inches along the line of the First avenue, running north from One Hundred and Twenty-third street. By the agreement between the parties named, Dale was to erect two four-story brick stores and dwellings fronting on the First avenue, and Bailie was to make a building loan to him of $5,000. This contract having been made Dale commenced to build and Bailie advanced the sum promised. This contract does not appear to have been assigned. In the following year and on the twenty-seventh of March, Dale having nearly finished the buildings, made an arrangement with the defendant Roberts to sell and convey to him a part of the lands, namely, the fifty feet and ten inches on the First avenue, with the two

houses thereon, for the sum of $41,000, and which the defendant agreed to pay for in the following manner, namely, $25,000 by assuming the payment of two mortgages then on or to be put upon the property, and $16,000 by conveying to Dale four lots on Second avenue and Ninety-fourth street, at the estimated value of the last mentioned amount. By the agreement between these persons Dale was to finish the houses within thirty days from the date thereof and deliver the deed of the premises upon the 27th day of April, 1872, at a place designated.

It further appears that on the eleventh day of May following, Bailie, Dale and Roberts met at the office of Davies & Work, the attorneys for the Mutual Life Insurance Company, who were to make a loan on the property, and the contracts to which reference has been made were carried out in the following way : Bailie, it appears, had not at that time given any deed to Dale, and at the request of the latter the conveyance was made directly to Roberts of the fifty feet and ten inches on the First avenue, and for the consideration already expressed, to wit, $41,000. To this course, Roberts assented, and secured the consideration for the transfer by executing and delivering to the Mutual Life Insurance Company a bond and mortgage for $16,000, and a second bond and mortgage to Bailie, which is the one in suit, for $9,000, and by these instruments the sum of $25,000 which he was to assume was made up ; and he further executed and delivered *in escrow* a deed to Dale of the Second avenue and Ninety-fourth street lots for the consideration of $16,000. By this arrangement it further appears that Bailie was paid the $15,000 to which he was entitled, as a consideration for the sale of the premises originally made to Dale, and was reimbursed the $5,000 which he advanced according to the agreement between the latter and himself, part payment of it being made by the $9,000 bond and mortgage, which was declared in the mortgage to secure a portion of the consideration or purchase-money expressed in the deed from Bailie.

It further appears that Bailie had no contract with Roberts other than that involved in the deed by him to the latter and in the mortgage from Roberts to him. Dale, it would seem, was the only one contracting with Roberts as to the sale of the premises bought by the latter, and as to the finishing of the houses to be completed. It

further appears that, at the time of these transactions at the office of Davies & Work, the houses were not completed to the satisfaction of Roberts, but that notwithstanding he closed the contract so far as Bailie was concerned, influenced thereto, doubtless, by the promise of Dale to complete them. It appears that Dale not only promised verbally to finish the houses, but executed and delivered to Roberts an agreement, in writing, at the time, in which it was declared that the acceptance of the deed by the latter was not to be construed as an acceptance of the work on the building as complete, nor as a fulfillment of the terms of the contract between him and Dale. But on the contrary it was expressed, stipulated and agreed between the parties that Dale was to proceed diligently with the work on the buildings until their completion ; and further, that the deed from Roberts to Dale, which formed a part of the consideration for the transfer from the latter, should remain in the hands of a person named Mack *in escrow*, and was to be delivered when the terms of that agreement should have been fulfilled. It further appears that Roberts never prosecuted Dale for a violation of the agreement, and that the deed which was delivered *in escrow* was subsequently obtained by Dale, and it would seem without the consent of Roberts and in violation of his rights. It also appears that after the delivery of the deed from Bailie to Roberts the latter entered into possession of the premises, and from aught that appears to the contrary is still the owner and in occupation thereof.

The bond and mortgage of $9,000 were assigned to the plaintiff on the 30th of May, 1872, and Roberts paid, without objection, the interest which accrued upon them up to the 1st of November, 1877, and $5,500 on account of the principal.

Roberts' defense rests upon the proposition of Dale's non-performance of his contract to finish the houses by which there was a partial failure of the consideration, and upon the damages sustained by him in consequence of such violation.

This statement of facts would seem to make it quite apparent that the defense suggested cannot be successfully maintained. If the evidence had established the fact that the plaintiff took the assignment with the knowledge of the equities existing in favor of the defendant growing out of his contract with Dale, a different result might accrue. But Mr. Roberts, by executing the mortgage

which he designated as one given for a part of the consideration for the transfer to him of the property which was covered by it, placed himself in a position which prevents him from assailing the bond, and the mortgage connected with it, upon any of the equities growing out of the relations existing between himself and Dale. There is nothing in either of these instruments giving notice of any relations between any persons in reference to the property other than the mortgagor and the mortgagee, and the former being the defendant has no claim whatever and no offset, according to the facts of this case, and no counter-claim and no equities against the mortgagee, namely Bailie, who, so far as he was connected with the property in any way, fully performed his obligations.

It would be very extraordinary if such a defense should be entertained under such circumstances. The plaintiff was a *bona fide* purchaser for value of a non-negotiable *chose in action*, and from one who had an apparent absolute ownership and valid title, an ownership and title conferred by the defendant himself, and he cannot be permitted, under such circumstances, to assert any infirmity in the title or in the validity of the paper. (*Moore* v. *The Metropolitan National Bank*, 55 N. Y., 41; *McNeil* v. *The Tenth National Bank*, 46 N. Y., 325; *Hudson Fire Insurance Company* v. *Winthrop*, 2 N. Y. Legal Observer, 37.)

This rule does not conflict with the well settled principle of law that the assignee of a non-negotiable *chose in action* takes only the title of his assignor, subject to the equities existing between the original parties to the transaction, because between the parties to the bond and mortgage there were no equities. It is true that to the extent of $4,000 it would appear that Dale was interested in the mortgage; but he was not a party to that instrument and Bailie held his interest in it as a trustee. But the instruments were silent upon that subject, and the relations growing out of that paper in reference to that event were those of trustee and *cestui que trust* between Dale and Bailie, though not expressed in the mortgage.

It is quite evident also that the defendant did not rely for protection upon the bond and mortgage, or any defense that he might conjecture in reference thereto, but upon his contract with Dale, because the deed of the premises conveyed by him to Dale was *in escrow*, and was not to be delivered to Dale until the latter had

completed his contract. And if the deed was prematurely delivered his remedy was against Dale or the person to whom the deed was delivered *in escrow*, or both, and the courts would have afforded him, under the circumstances, if the fact were as alleged, all the protection which he required. The conclusion that he was not thus influenced is further evidenced by the fact of the payment by him of the greater part of the principal and the interest upon it, and it would seem as if the defense interposed was an afterthought, probably induced by pecuniary embarrassments. Whether this be so or not is of no consequence so far as the appeal in this action is concerned, because, for the reasons assigned, the result seems to be inevitable that the plaintiff was entitled to a verdict; that the direction given to the jury to render one in her favor was correctly made, and that none of the exceptions taken are of any value.

The judgment should therefore be affirmed, with costs.

DAVIS, P. J., and DANIELS, J., concurred.

Judgment affirmed, with costs.