(20 Misc. Rep. 202.)

### PARMERTER v. COLRICK et al.

(Supreme Court, Special Term, Clinton County. April, 1897.)

ASSIGNMENT—RIGHTS OF ASSIGNEE—EQUITIES BETWEEN ORIGINAL PARTIES.
    The assignee of a bond and mortgage takes subject to all the equities existing between the original parties.

Action by Jacob Parmerter against Ann Colrick and others to foreclose a mortgage. Complaint dismissed.

W. H. Dunn, for plaintiff.
Everest & Signor, for defendants.

RUSSEL, J. The mortgage sought to be foreclosed is resisted upon the ground that it was given to an attorney of the mortgagor to secure him, and the counsel employed by him, for their services and disbursements in case they were unsuccessful in recovering damages and costs in a suit brought by the deceased husband of the defendant Ann Colrick to protect his water power from being diverted. The bond and mortgage given by the testator are absolute in form, and provide for the payment of $1,000, divided into payments of $200 on the 15th of January, 1883, $100 on the 15th of January, 1884, and $100 annually thereafter, with interest on the whole amount remaining unpaid at the time of each payment, and were executed to the attorney Joseph H. Bowron, on the 19th day of July, 1882. Two hundred dollars and interest were paid to the attorney by the mortgagor January 15, 1883, and $100 and interest January 15, 1884. No further payments have been made. On the 12th day of October, 1885, about nine months after an apparent default in the payment of the third installment due and interest, Bowron, the attorney, assigns to the plaintiff, Parmerter, a resident of the same village, the bond and mortgage to secure him as indorser upon a note of $700, payable in six months, which note the plaintiff paid. The plaintiff held the bond and mortgage nearly 11 years, without enforcing it or obtaining any payments, and commenced this action on the 21st of July, 1896.

It is beyond doubt that the real consideration of the bond and mortgage given by the testator, a client, to his attorney, was to secure him and the counsel who conducted the litigation, Judge S. A. Kellogg, of Plattsburgh, then a practitioner at the bar, in the event of disaster in the litigation begun by the testator, which unfavorable event would have placed liens upon the testator's property for adverse costs of litigation, destroying his power to remunerate his attorney and counsel. It is also apparent that the bond and mortgage were given upon the assurance and the agreement that the attorney and the counsel would be satisfied with the costs and damages they would recover from the other side in case of success, and thus the inducement was held out to the testator to mortgage his small property to secure his own confidential adviser and the associate counsel, in the hope that success would relieve him from any expense of the litigation, aside from the sacrifice of his own time and the payment of his own personal expenses. It is also certain that the testator would not have been likely to execute this bond and mortgage to secure absolutely the services and disbursements of the attorney alone, for, when the litigation started, that attorney had shortly before been admitted to the bar, and presumably had not demonstrated his capacity to handle a litigation of so serious a character to his client. And the concurrent and subsequent conduct of the mortgagor and mortgagee in intrusting to Judge Kellogg the practically sole management of the case, from its initial steps through the trial and the several appeals, indisputably shows that the security was largely intended for his benefit in case of adversity, and that the services of the young attorney, being largely perfunctory, were never intended to be compensated by a security in addition to his lien for costs and fees far beyond the amount of the value of any services he rendered, or, if we accept the modest estimate put by Judge Kellogg as a witness upon the value of his own services, more than the value of the work performed by both attorney and counsel for their client.

The event occurred which rendered the enforcement of the bond and mortgage unnecessary, and made it valueless in the hands of the mortgagee. The action was tried by Judge Kellogg, as counsel for the testator, and a recovery had in favor of his client, which was confirmed by the general term and by the court of appeals. Some $800 of costs and damages were collected by Judge Kellogg, who had during the progress of the litigation been substituted as attorney for the testator in place of the mortgagee, Bowron, of which sum he retained about $550, and paid the other $250 to the assigns of Bowron,—a sum which was larger than the value of his services in the litigation. In addition to this sum collected by Bowron and his assigns out of the judgment, Bowron himself had received from the mortgagor $300 and interest, amounting to nearly $100 more, thus making his beneficiary receipts from the testator nearly $100 larger than those of the counsel who had the burden of the litigation for five or six years. It is, of course, manifest that it would be a gross fraud to allow Bowron, were he the plaintiff, to collect the balance of $700 and interest for 13 years out of the small property the tes-

tator left his family, and that the attempt to enforce collection would be a very unjustifiable act by an attorney against his client's representatives. But the plaintiff claims that he stands in a different position; that an absolute bond and mortgage cannot be avoided by any collateral agreement sustained by oral evidence showing their real consideration or the terms upon which their delivery was made to the attorney. He claims that he could buy of an attorney a mortgage against his client, and enforce it against the real agreement between the parties, and in spite of the equities which exist, on the ground that all he needed to look at was the bond and mortgage, although one payment was then in default, and, if those papers were absolute in their terms, he could claim to be a bona fide assignee of instruments worthless between the original parties. Much might be said about the necessity of inquiry under such circumstances, the would-be purchaser presumably knowing the relations between the mortgagor and the mortgagee in the small village where they all lived, and possibly wondering why a lawyer just shortly before admitted to the bar should be the mortgagee named for so large a sum from his client to himself; but it is not necessary to follow this inquiry to the end.

1. The purpose and conditions of the delivery of an instrument for the payment of money can be shown by oral evidence wherever the circumstances would make the attempted enforcement of the instrument a violation of the agreement or a fraud. Juillard v. Chaffee, 92 N. Y. 529; Reynolds v. Robinson, 110 N. Y. 654, 18 N. E. 127; Baird v. Baird, 145 N. Y. 659, 40 N. E. 222.

2. The distinction between the purchase of a negotiable and nonnegotiable chose in action is still preserved. The general rule is that the assignee takes no better right than his assignor had, and is only deviated from where the action of the apparent obligator induces the purchase so as to create an estoppel. It has even been held by the court of appeals that the last assignee of a nonnegotiable chose in action takes subject to the equities existing between the prior assignor and assignee. Bush v. Lathrop, 22 N. Y. 535. This decision has been to some extent overruled, so that, where the owner of a chose in action transfers it by assignment absolute upon its face, he is held to have clothed the assignee with power to sell to an innocent person, as against himself, the same as though he had certified he had sold a horse to one who transferred the horse to a purchaser for value. Moore v. Bank, 55 N. Y. 41. But Judge Grover, in writing the opinion in that case, carefully limits the ruling applied to a transaction between the owner of a chose in action and his purchaser, and confirms the principle that each assignee takes the security subject to all defenses existing between the original parties. Id. 48. In a later case, a bond and mortgage executed by way of accommodation to be used as collateral security were diverted by the mortgagee by an absolute sale. It was held that the mortgagor could interpose the defense, and that the bond and mortgage were void. Davis v. Bechstein, 69 N. Y. 440. The same principle was sustained in Briggs v. Langford, 107 N. Y. 680, 14 N. E. 502; Hill v. Hoole, 116 N. Y. 299, 22 N. E. 547.

The conclusion, therefore, necessarily is that this bond and mortgage were never enforceable by the original mortgagee, and cannot now at this late day be enforced by his assignee. Judgment is given for defendants, dismissing the complaint upon the merits and canceling and discharging the bond and mortgage of record, with costs against the plaintiff. Ordered accordingly.