(24 Misc. Rep. 589.)

WOOD v. TRAVIS et al.

(Supreme Court, Special Term, Orange County. September, 1898.)

1. TRUSTEES—APPOINTMENT—VALIDITY.

That new trustees, in the place of a testamentary trustee who had renounced his appointment, were appointed without notice to some of the beneficiaries, was an irregularity which would not invalidate the appointment.

2. MORTGAGE—VALIDITY.

A will appointed an attorney, who drew it, executor; empowering him to hold the property in trust, and to borrow money by mortgaging the real estate, if necessary, to pay the debts, and a legacy left him in lieu of compensation for his services. He renounced the appointment, and acted as attorney in probating the will and procuring the appointment of his successors. The testatrix left no debts, and her funeral expenses were paid by her son and grandchildren, beneficiaries under the trust. The trustees then mortgaged the property to the executor to secure a bond for $500. *Held*, that the mortgage could not be upheld on the theory that it was executed under a power to secure a creditor of deceased.

3. SAME—CONSIDERATION—PRESUMPTION.

The facts and circumstances also rebut any presumption of a consideration which arose from the fact that the bond and mortgage were sealed instruments.

4. SAME—PURCHASER'S RIGHT.

The purchaser of a mortgage, without notice and for value, takes the same subject to the defense of want of consideration.

Action by William Wood against Eunice Travis and others. Complaint dismissed.

William Henry Haldane, for plaintiff.

Silas J. Owens, for defendants Eunice Travis et al.

Marvin R. Smith, for defendant Seth Secor.

John F. Schlosser, guardian ad litem for Travis infants.

HIRSCHBERG, J. Adah Travis died a resident of Coldspring, in Putnam county, on or about March 7, 1876, leaving a last will and testament, and codicil thereto, which were admitted to probate by the surrogate of that county June 19, 1876. Calvin Frost, a prominent lawyer, residing at Peekskill, was named as sole executor, and in the will the sum of $1,000 was given to him, "in lieu of all fees and commissions as such executor." He refused to serve, however, and duly filed his renunciation in the office of said surrogate. The deceased appears to have left but one child,—a son, Theodore; and at the time of her death Theodore had three children, viz. Lillian Travis, and the defendants Emma Hart and Harrison Travis. The son, Theodore, died about a year after his mother, and his daughter Lillian survived him but a few weeks. At the time of Adah Travis' death, Emma Hart had two infant children living, viz. the defendants Theodore Hart and Walter Hart. Harrison Travis has four children living, viz. the defendants Mabel, Alice, Arthur, and Lillian Travis, all minors. By the terms of Adah Travis' will and codicil, her real and personal estate were given to the executor in trust, in substance, to pay the income to her son, Theodore, for life, and at his death to divide the estate into three parts, paying the income of one part to each of the three grandchildren during life, and, at the death of each,

the principal to his or her issue, and, if no issue, to the surviving grandchild or children, or their issue. The will gave to the executor ample power of sale of the real estate, and further contained this provision:

"In case my personal property shall not be sufficient to pay all my debts and funeral expenses, and the sum of money hereafter given to my executor, and he shall not think it expedient to sell my real estate immediately after my decease, he is hereby authorized to borrow, on interest, by mortgage on such real estate to be made by him, such sum as may be necessary to supply any deficiency of my personal property for such purposes."

At the time of Adah Travis' death, she was the owner of certain real estate in Coldspring, on which she resided, and household and other furniture worth about $500.

In the autumn of 1876 an action was commenced in the supreme court by the son, Theodore Travis, for the purpose of procuring the appointment of trustees under the will in place of Mr. Frost. The three children of the plaintiff were the only defendants in that action, and Mr. Frost was the plaintiff's attorney. In that action, on December 15, 1876, Hamlet Hart and Henry Chapman were appointed trustees under the will of Adah Travis, and empowered to execute the several trusts therein contained, upon filing an approved bond in the penalty of $6,000, which they did on the same day. I cannot find from the evidence that the trustees after thus qualifying did anything else in their representative capacity, except to execute the mortgage hereinafter mentioned. No inventory was taken, nor were any proceedings ever instituted for a settlement of the estate. The trustees never took actual possession of either the real or personal estate. The uncontradicted evidence is to the effect that the deceased left no debts. The son continued to occupy and use the property until his death, and his widow (the defendant Eunice Travis) and their children continued to so occupy and use it thereafter, and among them they paid the funeral expenses and doctor's bills. On June 27, 1877, the trustees executed and delivered to Mr. Frost a bond and mortgage upon the real estate for $500, payable with interest on the 1st day of May, 1878. On January 5, 1878, the mortgagee assigned the bond and mortgage to Elizabeth and Mary Frost, and the mortgage and assignment were recorded on the 27th day of March, 1878. On July 26, 1881, the bond and mortgage were again assigned by Elizabeth Frost and Calvin Frost, executor, to Calvin Frost, the original mortgagee, which assignment was recorded March 2, 1882. Calvin Frost remained the owner of the bond and mortgage until his death, and thereafter, and on April 24, 1897, they were assigned by the executors of said Calvin Frost to the plaintiff, an attorney and counselor of this court, for the sum of $500 paid them by him, and that assignment was recorded May 7, 1897. This action was commenced in June, 1897, for the foreclosure of the mortgage, and at the time of the trial the amount unpaid, being the entire principal and interest for about 20 years, was the sum of $1,198.50. All the parties to the bond and mortgage are dead, and no successor or successors have ever been appointed in the place of the trustees.

The defendants insist that the plaintiff is prohibited by section 73

of the Code of Civil Procedure from maintaining this action, on the ground that he bought the bond and mortgage for the purpose of bringing the suit. He explains the reasons why he made the purchase, which reasons it is unnecessary to repeat; and I accept them, and hold that he is not within the prohibition of the statute.

They further contend that the trustees had no legal capacity to make the bond and mortgage, because of the fact that the two grandchildren of the deceased, Theodore and Walter Hart, were not made parties to the suit in which such trustees were appointed. The appointment of new trustees without notice would be valid, even if irregular. Milbank v. Crane, 25 How. Prac. 193. Other alleged irregularities in the action are disregarded for the same reason. But I am unable to find in the facts any authority in the trustees, admitting the validity of their appointment, to execute the mortgage in question, nor am I able to find any consideration therefor. It is claimed by the plaintiff that Calvin Frost was a creditor of the deceased, but there is no proof in support of such claim, and, as has been said, so far as there is 'any proof on the subject it is to the effect that Mrs. Travis left no unpaid claims. Mr. Frost did, indeed, draw the will, and acted as attorney in the matter of its probate, and in the action to procure the appointment of his successors. But no inference of an existing debt would flow from such facts, nor would his services in the surrogate's court and in the supreme court create any debt, as against the testatrix. Besides, the power conferred by the will does not include a right in the trustees to create a specific lien upon the real estate in the name and for the direct benefit of any creditor of the deceased, but only the right to "borrow" such sum as may be necessary to meet a deficiency in the personal estate for the payment of debts and the legacy bequeathed to the executor in lieu of commissions. The executor, by refusing to act as such, forfeited all right to the legacy, or to any share in or part of it. A mortgage to the creditors directly would be an entirely unnecessary provision in the will, as Mr. Frost well knew, inasmuch as the creditors had a lien upon the real estate, by statute, for a period long subsequent to the date of the maturity of the mortgage, and also a right, under section 1843 of the Code, and subsequent sections, to enforce their claims against the heirs after the lien should terminate. The trustees had no greater authority than the executor, and I am sure he could not have executed a mortgage to himself, and enforced it against the beneficiaries, upon the proofs in this case. It is impossible, therefore, to uphold the mortgage on the theory that it was executed under a power to secure a creditor of the deceased. The plaintiff has not claimed, upon the submission of the case, that the mortgage was given to secure a loan; but I am compelled to examine that question, since the authority of the trustees was limited to borrowing money, and the seals upon the bond and mortgage import consideration. The seal, however, upon a written instrument, is only presumptive evidence of a sufficient consideration, which may be rebutted. Code Civ. Proc. § 840. I am of opinion that the facts and circumstances of the case do rebut any presumption of a consideration which arises from the mere fact that the securities consist of sealed

instruments.    If, as plaintiff claims, Mr. Frost's services in the surrogate's and supreme courts were unrequited, it is inconceivable that he would also loan $500 to the estate.    If he had made such a loan, it would manifestly be by way of investment; and his conduct in never making a claim under the mortgage for even a portion of the interest, during the many years of his life subsequent to its execution, is inconsistent with that theory.    This is especially so in view of the fact that the real estate has steadily diminished in value, from about $5,000 at the time of the alleged loan, until now but little, if anything, in excess of the sum unpaid, and the costs of foreclosure.    The fact that the trustees paid no debts, taxes, repairs, expenses, or in any way actively engaged in the execution of their trust, is strongly corroborative of the view under consideration, as is also the fact that they did not resort at all to the personal estate for any purpose. Looking at the transaction in the light of all the facts and surroundings, I am convinced that the sum of $500 was agreed upon as a proper sum for Mr. Frost in consideration of his services to the estate, and possibly the renunciation of his legacy, and that he took the mortgage with knowledge that it was not enforceable, but with the expectation that the property would be sold in the succeeding spring, and the mortgage would then be voluntarily recognized by the heirs and paid off.    This view seems to be in accord with tradition in the village, for the plaintiff testified on cross-examination on the trial that he heard 10 or 15 years ago that "this mortgage was given to Calvin Frost, because by the will of Adah Travis he was given $1,000 to settle her business as her executor; that he proved the will, and refused to go any further, and new trustees were appointed, and they gave him $500 to quit."    He added that he may himself have repeated this rumor.    Of course, the decision is not to be influenced in any manner by rumor, however well it may tend to explain the taking of the mortgage, and its retention in the family of the mortgagee for a score of years without asserting its validity, and its final sale at less than one-half of its actual value, if valid and enforceable.

I have treated the case as though the burden of showing want of authority and want of consideration rests on the defendants.·    It is not clear but that, if this action were brought by Mr. Frost in his lifetime against these defendants, he would be required to show affirmatively that his dealing with their trustees was within the scope and under the conditions and limitations of the authority to borrow money, and that he actually loaned to them the full amount represented by the incumbrance.    Be that as it may; it is certain that the plaintiff is in no better position than his assignor.    It seems to be the law in this state that the purchaser of a nonnegotiable chose in action, such as a mortgage, without notice, and for value, takes the same subject to the defense of want of consideration.    Ingraham v. Disborough, 47 N. Y. 421; Davis v. Bechstein, 69 N. Y. 440; Briggs v. Langford, 107 N. Y. 680, 14 N. E. 502; Hill v. Hoole, 116 N. Y. 299, 22 N. E. 547; Parmerter v. Colrick, 20 Misc. Rep. 202, 45 N. Y. Supp. 748.    The plaintiff when he bought the bond and mortgage knew the terms of the will of Adah Travis, and knew that the securities had been dishonored almost from their inception; and these and other

facts known to him, including the discount he received, were quite sufficient to put him on inquiry. He claims to have made inquiry, but does not disclose any resultant discovery of facts which tends in any degree to support the bond and mortgage as evidences of a valid debt and lien.

The defendants are entitled to judgment dismissing the complaint upon the merits, and canceling the lien upon the record, with costs. Ordered accordingly.