THE FARMERS' NATIONAL BANK OF SALEM v. FLETCHER ET AL.

1. **Notice**: INCUMBRANCE BOOK: ATTACHMENT. Where an equitable interest in land, which does not appear of record, is attached and a statement thereof is entered in the incumbrance book, the book does not constitute constructive notice to a vendee or mortgagee of the person holding the legal title.

2. **Lis Pendens**: NOTICE TO GRANTEE. A grantee is not affected by a *lis pendens*, where the conveyance to him was made prior to the commencement of the action in which it is sought to establish a charge upon the land as the property of his grantor.

3. **Vendor and Vendee**: OUTSTANDING EQUITIES. Whoever purchases real estate of the person holding the legal title and takes a conveyance of the property without notice of outstanding equities and pays a valuable consideration, takes it divested of such equities and of all liens thereon.

4. **Mortgage**: BONA FIDE HOLDER: INFIRMITIES. The *bona fide* assignee of a mortgage, for value, does not take it subject to all the infirmities which attached to it in the hands of the mortgagee.

5. ———: ASSIGNMENT OF: ESTOPPEL. The assignor of a mortgage for a valuable consideration is estopped to assert that his mortgagor had no existence.

## Appeal from Jones District Court.

### TUESDAY, OCTOBER 3.

ACTION to foreclose a mortgage upon 840 acres of land in Jones county. The defendant and appellant, Edgar Loomis, claims to have a judgment lien upon the mortgaged land, and sets up by way of defense and cross-petition that the plaintiff's mortgage is void, or if not, that his said judgment lien is paramount thereto. The essential facts are as follows: In July, 1871, the title to the land was in one Merrick. He conveyed to the defendant, Emily J. Montgomery. In May, 1872, she executed a deed purporting to convey the land to the defendant, Fletcher. On the same day the mortgage in suit was executed upon the land, purporting to be made by the said Fletcher to the said Emily J. Montgomery, to secure three promissory notes of $6,000 each, and payable respectively

December 1, 1872, September 1, 1873, and September 1, 1874. In December, 1872, the plaintiff acquired the first and third of said notes, the same having been previously indorsed by the said Emily J. Montgomery to her husband, James Montgomery, and by him to Schilling, Jennings & Kerr, the plaintiff's assignors.

The claim of the defendant, Edgar Loomis, is grounded upon the following facts: In May and September, 1871, he loaned to said James Montgomery between four and five thousand dollars. A judgment in the Circuit Court of Cook county, Illinois, was rendered upon notes given for said loan about December, 1871. In March, 1872, an action on said judgment was brought by said Loomis, against James Montgomery in the Circuit Court of Jones county, Iowa, and on the same day an attachment therein was issued and levied upon said land, and on the same day the attachment and levy were entered in the incumbrance book. Personal service of notice of said action was made on James Montgomery at Chicago, Illinois. Afterwards, to-wit: April 16, 1872, judgment was rendered in said action, and an order made for the sale of the land attached. In May, 1872, and before the execution of the said deed to Fletcher, and of the plaintiff's mortgage, execution on said judgment was issued and levied on said land and the sale was advertised. Before the day of sale, to-wit: June 6, 1872, said Emily J. Montgomery filed her petition in the District Court of Jones county, against said Loomis and the sheriff to enjoin the sale of said land, and obtained a temporary injunction on the ground that it was the property of said Emily J. Montgomery. The petition was sworn to by her after the execution of the deed from her to Fletcher, and after the execution of the plaintiff's mortgage. On July 23, 1872, being one day after the said deed and mortgage were filed for record, said Loomis filed his answer and cross-petition, alleging that the property belongs to James Montgomery, and that the title had been taken in the name Emily J. Montgomery in order to defraud his creditors, and asked that the injunction be dissolved and the property subjected to the payment of his debt. Such proceedings were

had in said action as that at the May term, 1875 of said District Court, a decree was rendered in the case dissolving the injunction and adjudging that the land was the property of said James Montgomery at the time it was attached, and was held by said Emily in secret trust for said James to defraud said Loomis as his creditor, and ordering that said land be subjected to sale for the payment of said Loomis' debt. There were other facts in the case, more or less controverted, but the opinion at which we have arrived upon the legal questions will render the consideration of them unnecessary. Decree for the plaintiff. The defendant, Loomis, appeals.

*Sheean & McCarn* and *C. C. Cole*, for appellant.

*Remley & Remley*, for appellee.

ADAMS, J.—I. The land was attached by Loomis, and the attachment duly noted in the incumbrance book before the execution of the plaintiff's notes and mortgage. Such being the fact, it is claimed by Loomis that the plaintiff had constructive notice of his claim.

But where an equitable interest in land, which does not appear of record, is attached, and a statement thereof is entered in the incumbrance book, the book does not constitute constructive notice to a vendee or mortgagee of the person holding the legal title. The law provides for no index to the land described in the incumbrance book, nor could a serviceable index be made. Incumbrances are to be discovered in any given case through the names of the defendants in the attachment suits. If we should hold that the incumbrance book constitutes constructive notice of an attachment, entered therein, of an equitable interest not apparent of record, to a vendee or mortgagee of the legal interest, every person about to become such vendee or mortgagee would find it necessary for his safety to read the whole incumbrance book. Such was not the design of the statute.

1. NOTICE: incumbrance book: attachment.

When Loomis had attached the land in question as the property of James Montgomery, if it was true, as he claimed,

that Emily J. Montgomery, James' wife, held the legal title with intent to defraud her husband's creditors, he should have instituted a suit in equity against her to charge her as trustee, and restrain her from disposing of the property in consummation of the fraud.

II.  It is claimed by Loomis that the plaintiff is affected by a *lis pendens.*  At the time plaintiff acquired the notes and mortgage there was a suit pending to which Mrs. Montgomery was a party, in which Loomis' claim upon the land was distinctly asserted.  The suit, to be sure, was brought by her, but Loomis' claim was set up in it by cross petition, and that too before the notes and mortgage passed to the plaintiff.

2. LIS PEN-DENS: notice to grantee.

Without stopping to inquire whether a grantee is affected by a *lis pendens*, where the grantor is plaintiff, and the claim with which the land is sought to be charged.is made in a cross petition, we will observe that at the time the deed was made to Fletcher the suit in question had not been commenced. As plaintiff's interest was derived through Fletcher, plaintiff was not affected by any suit brought against Fletcher's grantor later than the conveyance to Fletcher.

But it is said that Fletcher is a myth, and being such the mortgage which purports to be made by him is at best but a mortgage made by Emily J. Montgomery, and that if plaintiff bought a mortgage virtually made by her he would be affected by any suit against her to charge the land pending at the time he bought.

Whatever the fact may be, however, in regard to the mythical character of Fletcher, it is not pretended that the plaintiff knew anything about it, and in examining the record in regard to the validity of the mortgage, the plaintiff had a right to assume that Fletcher was a real person.

III.  Without regard to the question of *lis pendens* the counsel for Loomis, if we understand them, take the broad ground that the evidence clearly establishes the fact that James Montgomery was the real owner of the land at the time when Loomis recovered judgment against him in the Circuit Court of Jones county,

3. VENDOR and vendee: outstanding equities.

and that if he was the owner, the deed to Fletcher being made subsequent to the rendition of the judgment, must be regarded as subject to it. Such, however, we think is not the law. Whoever purchases real property of the person holding the legal title, and takes a conveyance of the property without notice of outstanding equities, and pays a valuable consideration, takes it divested of such equities, and of course of all liens on such equities.

IV.　It is further claimed that the evidence shows that Mrs. Montgomery, the mortgagee, was not a *bona fide* holder of the notes and mortgage, and that no purchaser of them could stand in any better position than she did. The counsel for appellant rely upon *Sims v. Hammond*, 33 Iowa, 368. But a careful examination of that case will show, we think, that the court did not intend to announce the doctrine contended for. In that case a mortgage was held to be subject to another mortgage which was executed and recorded later. But the later mortgage was given for the purchase money, and the mortgagee in the first mortgage had knowledge that the later mortgage was to be given. Besides the earlier mortgage was executed before the acknowledgment and delivery of the deed through which the mortgagor derived title. While, therefore, the earlier mortgage had been sold and assigned to a person who had no actual notice of the later mortgage, yet as the assignment was made after the later mortgage was recorded, it was thought, as we infer, that the assignee was charged with constructive notice. The decision is based upon *English v. Waples*, 13 Iowa, 57, which turned upon constructive notice to the assignee. This court has never announced the broad doctrine that the *bona fide* assignee of a mortgage for value takes it subject to all the infirmities which attached to it in the hands of the mortgagee. In *Preston, Kean & Co. v. Morris, Case & Co.*, 42 Iowa, 549, the plaintiffs, as indorsees of a negotiable promissory note, secured by a mortgage made by the defendant Case, brought suit to foreclose the mortgage. Case set up a want of consideration. It was held that such defense could not be allowed as against the plaintiffs. See, also, *Car-*

*4. MORTGAGE: bona fide holder: infirmities.*

*penter v. Longan*, 16 Wallace, 273; *Sawyer v. Prickett*, 19 Id., 166; *Taylor v. Page*, 6 Allen, 86; *Moore v. Metropolitan National Bank*, 55 N. Y., 41.

V. Finally it is contended that if Fletcher was a myth no title passed from Mrs. Montgomery, and plaintiff acquired 5. ——: assign- nothing by the mortgage. But if Mrs. Mont-
ment of:
estoppel. gomery executed a deed of the land to a fictitious person and caused a mortgage upon it to be executed to herself in the name of such person, and transferred the mortgage to an innocent purchaser for value, in a suit to foreclose the mortgage in which she should be defendant, she would be estopped from averring that her grantee and mortgagor had no existence. In the transfer of the mortgage she asserted its validity, and as against her it would constitute a lien. If it would not constitute a lien as against others, it would be because such others had for some reason a superior equity. Is Loomis' equity superior to the plaintiff's? We think not. Loomis holds at most only a general lien. The plaintiff's is a specific lien. On the strength of it plaintiff parted with its money.

AFFIRMED.