## CHARLES A. GREGORY *vs.* MARY H. PIKE.

## Washington.    Opinion February 12, 1900.

*Submission.    Attorney.    Judgment.    Record.    Evidence.    Bills and Notes.*

A submission, not by rule of court, may be revoked by a party to it before award made; but it is otherwise if the submission is by rule of court.

*Held;* in this case, that neither the referee, nor the parties, regarded himself as making an award of binding force.

The death of a party to a submission operates a revocation of the submission.

While an attorney may be regarded, under his general employment, as endowed with authority to submit his client's cause to arbitration, it is doubtful whether such authority is sufficient to justify a stipulation in a submission to the effect that in case of death of either party before award is made, the award when made shall bind the legal representative.

Where a court has jurisdiction of the subject matter and of all the parties in interest, the subject matter in controversy becomes res judicata when all the parties have appeared, were heard, and a final decree has been rendered.

The defendant objected to a record of proceedings in the Circuit Court of the United States upon the ground that the record was not complete, and was not properly certified. It appeared that the record was prepared for the Supreme Court in certain appealed cases of the plaintiff against the defendant and a cross-bill filed by another party. This record contained all the pleadings of all the parties claiming an interest in the subject matter in controversy, together with the proceedings of the court thereon up to and including the final decree. *Held;* that nothing further is required or would be of use in this case. *Also;* that the attestation by the clerk of that court, under seal, is a sufficient affirmation of the verity of the matters contained in the record; and therefore this record, as verified, is admissible.

An immediate assignee of a non-negotiable note may afterwards transfer the same to an innocent holder, who will be protected to the extent of his claim.

ON REPORT.

Bill in equity, heard on bill, answer and proofs, alleging that the defendant was not legally entitled to a fund held by the Boston Trust Company and that she had wrongfully obtained said money in violation of an express trust agreement under which it was thus held; also that said fund is charged with a resulting trust in favor of the complainant who is legally entitled to it under and by virtue of an award of an arbitrator made and published December 20,

1886, and which award has never been annulled nor set aside by any court of law, nor waived or reopened by any act of the complainant.

The case is stated in the opinion.

*F. A. Brooks and Robert T. Whitehouse,* for plaintiff.

*T. H. Talbot; J. W. Symonds, D. W. Snow and C. S. Cook,* for defendant.

SITTING: HASKELL, WISWELL, STROUT, SAVAGE, FOGLER, JJ.

STROUT, J.   Plaintiff alleges that on April 25, 1883, he was the equitable owner of two non-negotiable notes, of that date, signed by William C. N. Swift and payable to Charles F. Jones, one for $15,000 payable in two years from date with interest, and the other for $20,334.60 payable in three years from date with interest. Jones, the payee, without authority from Gregory, as he claims, on or about July 31, 1883, delivered the notes to George W. Butterfield, who on that day delivered them to Frederick A. Pike as collateral security for a payment of $25,000 due from him to Pike, under an agreement of that date by which Pike was to sell and convey certain mining property to Butterfield.   The notes bore upon their back the indorsement of Jones, the payee.   When Gregory learned of this transaction, he demanded the notes of Pike, who refused to deliver them ; and Gregory, in December, 1889, brought a bill in equity in the Supreme Court of Massachusetts against Pike and Swift to recover possession of them.

This suit was removed to the United States Circuit Court, and became number 2170 on the equity docket of that court.

Pending this suit, on January 8, 1886, Pike and Gregory made an agreement, by which Pike was not to deal with either J. C. Kemp, Butterfield, or Jones, each of whom claimed an interest therein, in reference to the notes, except in pursuance of Gregory's rights as they might be determined in this suit—and that the larger note should be lodged with Amos P. Tapley to abide the determination of the suit; and if that note was not paid at maturity, suit should be brought under the joint direction of the attorneys of

Pike and Gregory.   January 22, 1886, Kemp and Butterfield were made parties defendant to the bill.   November 30, 1886, the attorneys of Pike and Gregory agreed in writing to submit the controversy to Judge Hoar, as referee, but Kemp and Butterfield were not parties to the submission, and it was not made a rule of court, nor any entry in regard to it made upon the docket.   By the agreement Hoar was to have possession of the notes and deliver them to the party he found entitled to them.   The counsel proceeded to a hearing before Judge Hoar in December, 1886—but before the hearing had concluded Pike died.   Notwithstanding this, counsel continued the hearing, but without authority from the defendant, Mary H. Pike, wife of Frederick A. Pike and named as his executrix in his will, but who was not qualified as such till March 1887.   Neither Kemp nor Butterfield were represented.   December 18, Judge Hoar verbally announced his decision.   On the 17th, Mr. Brooks, counsel for Gregory, having drawn a form of award, asked Judge Hoar to sign it, which he did, and offered to make a delivery of it as his award, which Brooks declined till Talbot, Pike's counsel, could see it, as he might desire some change.   On the 24th, Brooks and Talbot called on Judge Hoar by previous request from him.

That morning Mrs. Pike had delivered to Hoar a written revocation of his authority as referee.   At that interview Judge Hoar asked to be relieved from the further custody of the Swift notes, and hesitated about receiving payment for his services, remarking that he did not know as the parties had derived any benefit from them.   He said the award was not to be binding as an award until Pike's counsel should be heard in relation to it.   He then delivered to Brooks and Talbot the award and the Swift notes, and they immediately, in pursuance of previous arrangement, delivered them to John G. Stetson, upon his receipt therefor, with the stipulation that they should be held "subject to the joint order and direction of the said Talbot and Brooks, and dealt with as they may jointly direct."   Both of the Swift notes were put in suit at their maturity, and their amounts were paid into the Circuit Court, and there held by order of that court to await determination of the rights of the several claimants of the fund.

By order of that court the fund was transferred to the credit of equity suit 2170, "to remain subject to the order of court in that case." By order of court, with the consent of all parties, the fund was deposited upon interest in the Boston Safe Deposit and Trust Company. January 10, 1887, Gregory brought a supplemental bill against Stetson, Swift and Talbot, docketed in the original suit 2170, for the purpose of reaching the proceeds of the $20,000 note of Swift, by virtue of an alleged award of Judge Hoar. August 6, 1887, Gregory brought another bill in equity in the Circuit Court against the Safe Deposit and Trust Company and this defendant Mary H. Pike, docketed as number 2424, claiming under the award of Judge Hoar. To this suit Mrs. Pike appeared and answered as executrix of F. A. Pike. A cross-bill was brought by Kemp in which he claimed an interest in the Swift notes. Butterfield also brought a cross-bill. Both of these were in 2170. April 29, 1887, on motion of Gregory, the court ordered that this defendant, Mary H. Pike, be summoned to appear and answer to the supplemental bill in number 2170. In response to this Mrs. Pike, as executrix, appeared and answered to the supplemental bill and the original bill. The cause then proceeded, testimony was taken, hearing had and decree rendered March 8, 1894. By this decree Kemp took one-half of the amount of the $15,000 note, and Mrs. Pike $25,000 with interest from January 1, 1884, if the fund in court was sufficient therefor—if not, the balance of the fund,—and the cross-bill of Butterfield was dismissed. This decree was in number 2170.

Gregory's bill 2424 having been dismissed by the Circuit Court, that and Kemp's cross-bill in 2170 were carried to the Circuit Court of Appeals, and thence to the Supreme Court of the United States, where the dismissal of Gregory's bill 2424 was sustained, and it was held that all persons interested in the fund were parties to the original bill in 2170, and that their rights could "be effectively determined only in equity cause No. 2170." *Gregory* v. *Boston Safe Deposit and Trust Co.*, 144 U. S. 668.

In pursuance of mandates from that court and the Circuit Court of Appeals, a final decree in number 2170 was entered in the

Circuit Court on June 20, 1896, by which from the fund then in court, amounting to $50,131.85, after payment of certain fees and costs, $9,439.98 being one-half of the amount received on the $15,000 note, was decreed to Kemp, and the remainder of the fund, being less than $25,000 and interest thereon from January 1, 1884, was decreed to this defendant, Mary H. Pike, executrix of F. A. Pike. The cross-bill of Butterfield was dismissed, and the cross-bill of Kemp allowed to stand as a petition pro interesse suo. Payment was made to Mrs. Pike according to this decree.

Plaintiff's bill seeks to recover the amount of this payment from her.

Notwithstanding the attempt of parties to transfer the controversy from suit 2170 to suit 2424, it failed, because the court held that it should be settled in the earlier and original case.

Much stress is laid upon an award by Judge Hoar. The submission to him was signed by counsel, and not by the parties, and it does not appear that Pike's counsel had any other authority to refer than that arising from his general employment as counsel, nor that Pike subsequently ratified or even knew of the submission or hearing under it. It could not be a reference of suit 2170, because Swift, an original defendant, was not a party to it by himself or counsel—nor could an award under it determine anything more than the title to the Swift notes, as between Gregory and Pike. Other parties, subsequently brought in, claimed rights, and Kemp, at least, was ultimately shown to have a substantial interest therein.

While an attorney may be regarded, under his general employment, as endowed with authority to submit his client's cause to arbitration, *Buckland* v. *Conway*, 16 Mass. 397, *Everett* v. *Charlestown*, 12 Allen, 96, it is doubtful whether that authority is sufficient to justify a stipulation like that in this case, that in case of death of either party before award made, the award when made shall bind the legal representative. The death of Pike previous to conclusion of the hearing before Judge Hoar, terminated the authority of his attorney, Talbot, and he was unauthorized to proceed further for him. He had not then become the attorney of

Mrs. Pike, the executrix, and was not empowered to continue the hearing on her account. So the death of one of the parties to a submission operates a revocation of the submission. *Sutton* v. *Tyrel*, 10 Vt. 94; *Marseilles* v. *Kenton*, 17 Pa. St. 245.

If, therefore, after Pike's death Judge Hoar made an award, it was inoperative, unless saved by the stipulation in the submission as to the legal representatives, within the doctrine of *Tyler* v. *Jones*, 3 Barn. & Cr. 144. But even in that event, Mrs. Pike, executrix and residuary legatee under the will of F. A. Pike, before any award was made, revoked the submission by written notice to that effect to Judge Hoar. It is universally held that any submission, not by rule of court, may be revoked by a party to it, before award made. *Green* v. *Pole*, 6 Bingham, 443; *Dexter* v. *Young*, 40 N. H. 130; *Brown* v. *Leavitt*, 26 Maine, 251. It is otherwise if the submission is by rule of court. *Haskell* v. *Whitney*, 12 Mass. 47. If the stipulation in the submission that the legal representative should be bound by an award after death of one of the parties is sufficient to bind the representative, it follows that upon such representative the power to revoke must devolve.

But we are satisfied from the acts and declarations of Judge Hoar, and the acts of the parties then and subsequently, that Judge Hoar did not regard himself as making an award of binding force, and that both parties so understood. For instead of a delivery of the Swift notes by Judge Hoar to Gregory, in accordance with his finding and in execution of the terms of the submission, he delivered them to the attorneys of the respective parties, who, by a previous arrangement, delivered them to Stetson, to be by him retained subject to the joint order of Brooks and Talbot— and thenceforward the parties proceeded with the equity cause 2170, took testimony, and had a hearing, subsequent bills and answers were filed, and the litigation proceeded from December, 1886, when Judge Hoar surrendered the notes, to June, 1896, when final decree was entered in the original equity suit. Gregory does not appear to have made any claim under the award, except by his supplemental bill filed in January, 1887, in equity cause 2170.

When Butterfield delivered the Swift notes, not then due, to F.

A. Pike as collateral for a payment of $25,000 then due under his contract, the notes bore upon their back the blank indorsement of Jones, the payee, which was a sufficient assignment. The holder was authorized to fill such indorsement with a promise to pay the contents to him. Randolph's Commercial Paper, § 660; *Josselyn* v. *Ames*, 3 Mass. 274; *Sweetser* v. *French*, 13 Met. 262; *Wareham Bank* v. *Lincoln*, 3 Allen, 192. Butterfield had the possession and indicia of ownership of the notes, and Pike received them without notice of any claim by Gregory or any other party, for a valuable consideration, and was entitled to hold them as a bona fide holder to the extent of his claim of $25,000. Pomeroy's Equity, § 710; *McNeil* v. *Tenth Nat. Bank*, 46 N. Y. 325; *Combes* v. *Chandler*, 33 Ohio St. 178; *Farmers' Nat. Bank* v. *Fletcher*, 44 Iowa, 252.

But the rights of these parties have been determined in the litigation in the circuit court. That court had jurisdiction of the subject matter and of all the parties in interest. They all appeared and were heard and a final decree rendered. It is now res judicata. Under that decree the defendant rightfully received the funds which the complainant claims in this suit, and she is entitled to hold them.

It is objected that the record offered by defendant of the proceedings in the Circuit Court is not admissible, because not a complete record, and not properly certified.

The record was prepared for the Supreme Court of the United States in the appealed cases of this complainant against this defendant and Kemp's cross-bill. By agreement of counsel certain depositions were not printed in that record—but they are not material here. The record contains all the pleadings of all the parties claiming an interest in the Swift notes, and the proceedings of the court thereon up to and including the final decree. Nothing further is required or would be of use here. The attestation by the clerk of that court, under its seal, is a sufficient affirmation of the verity of the matters contained in the record. We regard that record, as verified, admissible.

It is also objected that the decree dealt with equity cause 2170, as a proceeding in rem. When that suit was instituted, the Swift notes existed, unpaid. Pending the litigation, the notes were con-

verted into money by their payment, which then stood as a substitute for the notes. The parties claiming an interest in the notes desired through that interest to realize their share of the money the notes called for, that being the only value in them. This end was appropriately accomplished by the decree rendered. In fact, it was the only decree that could be rationally entered after the notes had been converted into money.

*Bill dismissed with costs.*